UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

IBRAHIM FRANK FAYZ,

                  Petitioner,                Case No. 1:07-cv-1246

v.                                      Honorable Janet T. Neff

CARMEN PALMER,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. After a bench trial, Petitioner was convicted of one count of breaking and entering with intent to commit a felony or a larceny, MICH. COMP. LAWS § 750.110. Petitioner was sentenced by the Wayne County Circuit Court on April 28, 2005 to a term of 5-to-10 years' imprisonment. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.       Conviction was obtained by Evidence that was Insufficient to support a conviction.

    II.     Denial of Effective Assistance of Counsel.

(Pet., Docket #1 at 4-5.)

Judge Janet T. Neff has referred this matter to me for review of the record and issuance of a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Rule 10, RULES GOVERNING § 2254 PROCEEDINGS IN THE DISTRICT COURTS. Respondent has filed an answer to the petition (docket #10) stating that the grounds should be denied because they are without merit. Upon review

and applying the AEDPA standards, I find that both habeas grounds are without merit. Accordingly, I recommend that the petition be denied.

**Procedural History**

**A.      Trial Court Proceedings**

The state prosecution arose from a November 30, 2004 breaking and entering at Joe and Ed's Supermarket, located at 5635 Schaefer Road in Dearborn, Michigan. Petitioner was charged with one count of breaking and entering with intent to commit a felony and one count of larceny in a building. Following a preliminary examination on December 10, 2004, Petitioner was bound over on both charges. A supplemental information was filed charging Petitioner as a fourth habitual offender, MICH. COMP. LAWS § 769.12. Petitioner waived his right to a jury trial and was tried before a judge on March 30, 2005.

Albert Saad, the owner of Joe and Ed's Supermarket, testified that the business closed as usual at about 12:30 a.m. on November 30, 2004. The front door was locked at that time. Prior to closing, there was no damage to the front door. When he was called to return to the scene, the glass on the front door was broken and cigarettes were missing. (Tr., 8.) On cross-examination, Saad acknowledged that he was not present at the time the store closed, having gone home at 4:30 or 5:00 p.m. on November 29, 2004.

Dearborn Police Sergeant Michael York testified that he was on routine patrol in an unmarked car on the night of November 29 to 30, 2004. Just before 3:00 a.m. on November 30, he observed a black 1999 Ford full-size van driving without lights northbound on Schaefer Road near Ford Road. (Tr., 13-14.) The van drove 100 to 200 feet north of Ford Road and then made a sudden U-turn, stopping directly in front of Joe and Ed's store. York saw a white male run from the store

carrying a large object.  The man entered the passenger side of the van.  The van immediately left

the curb and drove south on Schaefer and then west on Ford Road.  (Tr., 14-15.)  The lights of the

vehicle turned on when it reached Ford Road.  (Tr., 15.)  The van began to speed on Ford Road.  (Tr.,

21.)  York called another plain clothes officer to check for damage to the door of the store.  He also

requested uniformed officers in marked patrol cars to stop the van.  Meanwhile, York followed the

van until it turned into the Residence Inn parking lot on Ford Road west of Southfield Road.  (Tr.,

15.)  A marked police car was behind the van, and an officer stopped the vehicle once it entered the

lot.  (Tr., 16, 21.)  York identified Petitioner as the driver of the vehicle.  Another man was behind

the driver, near the middle of the van.  (Tr., 16.)  After the vehicle had been stopped, York observed

a large plastic garbage can in the center of the van that contained cartons of cigarettes.  York

identified Exhibits 3 and 4 as pictures of the contents of the garbage can.  (Tr., 17.)

Dearborn Police Corporal Derrick Hadder testified that he responded to Sergeant

York's request that he investigate Joe and Ed's Market at 5635 Schaefer Road.  He found that an

audible alarm was sounding and the front door had a hole right above the lock, big enough to fit a

hand through.  (Tr., 25.)  Hadder entered the business and noticed several cartons of Marlboro and

Winston cigarettes scattered on the floor behind the counter.  He also noticed a gap in the cigarette

display case, indicating that some cigarettes were missing.  (Tr., 26-27.)  He contacted the owner,

Mr. Saad.  (Tr., 27.)  Hadder identified Exhibits 5 and 6 as pictures of the scene as he found it.  (Tr.,

26.)

Dearborn Police Corporal Don Wilcox initiated the traffic stop of the Ford Econoline

van at the Residence Inn.  After the stop, Wilcox investigated the contents of the van.  (Tr., 29.)  He

saw several cartons of cigarettes, a black trash can and a claw hammer, all located in the rear seat

area.  (Tr., 30-31.)  Petitioner was seated in the driver's seat, and Mr. Koskela was in a captain's chair on the rear passenger side of the van.  (Tr. 31.)  The trash can was located between the two captain's chairs in the rear.  (Tr., 31-32.)

Michael Sabo testified that he was a Sergeant with the Dearborn Police Department and was the officer in charge of the case.  (Tr., 34.)  Sabo interviewed Petitioner at the Dearborn police station.  (Tr., 34-35.)  He advised Petitioner of his rights, reading from a form used by the department.  (Tr., 35.)  The form was placed in front of Petitioner and Sabo read the form aloud, pointing to each of the five rights as he read it.  (Tr., 36.)  Petitioner looked at the form after it was read, and he initialed each number and then signed the form.  (Tr., 36.)  Petitioner indicated that he wished to waive his rights and speak with Sabo, but Petitioner declined to make a written statement.  (Tr., 37.)  Petitioner told Sabo that, in the late afternoon or early evening of November 29, Petitioner's car broke down.  He asked his friend, Timothy Koskela, if he could use Koskela's van. Koskela agreed.  At approximately 12:30 or 1:00 a.m. on November 30, Koskela contacted Petitioner and said that he needed a ride to a party store.  Petitioner picked Koskela up near Warren Avenue and Southfield Road.  Koskela asked Petitioner to drive him to the Rite Aid located on Shaefer just north of Ford Road.  Petitioner did so, stopping on Schaefer Road facing northbound in front of the Rite Aid.  Koskela got out of the van and walked across the street to Joe and Ed's Market.  Petitioner heard glass breaking.  He then drove the car around, doing a U-turn to pull up in front of Joe and Ed's Market.  Petitioner said that he did not know what had happened but that he didn't want to leave his friend hanging.  Koskela jumped into the van carrying a large trash can.  Petitioner then drove south on Schaefer Road.  Petitioner stated that he knew that Koskela had taken something, but he did not know what was in the trash can.  (Tr., 38-39.)

Petitioner took the stand. He testified that, in the late hours of November 29, 2004, Koskela called and asked Petitioner to drive Koskela to the Rite Aid on Ford Road and Schaefer. (Tr., 44.) According to Petitioner, he drove to the Rite Aid and parked in the Rite Aid parking lot, not on the street. Koskela got out of the van and Petitioner saw him walk towards the Rite Aid. Petitioner turned the van off, but put the music back on. Petitioner started the van again when he noticed Koskela hollering at him from across the street, in front of Joe and Ed's Market. (Tr., 45.) When Petitioner saw Koskela, Koskela had nothing in his hands. Petitioner started the van, made a U-turn, and stopped in front of Joe and Ed's Market to pick up Koskela. Petitioner did not realize that his lights were off at the time. (Tr., 46.) When Petitioner stopped, Koskela got into the back seat with a black object. Petitioner did not know what the object was at that time. Koskela told Petitioner that he needed to visit his girlfriend. (Tr., 47.) Petitioner drove off and went west on Ford Road. He then looked at his dashboard and realized that it was dark, indicating his lights were off. He turned his lights on. (Tr., 48.) Petitioner continued to the Residence Inn, where he pulled into the parking lot. He did not realize that a police car was behind him until he parked. At that time, he saw an unmarked police car and men got out saying, "[G]et out of the van and hands behind your back." (Tr., 48.) After he and Koskela were surrounded by officers, he discovered what was in the black object Koskela and brought into the van. (Tr., 48-49.) Petitioner testified that he had no knowledge that there had been a break-in, and he denied having heard anything. (Tr., 49.)

Petitioner testified that, after being stopped, he was taken out of the van, placed under arrest, and taken to the Dearborn police station. The following morning, he had an interview with Detective Sabo. (Tr., 50.) After being read his rights and after signing the rights form, Petitioner made no further statements. He did not know what was going on and had no knowledge that there

had been a break-in. (Tr., 51.) The court asked, "You mean to tell me you guys had been riding around and it's three o'clock in the morning and you hadn't said anything to each other?" Petitioner testified that the drive to the Residence Inn was only five minutes. He also testified that he had picked Koskela up from a store in Detroit. (Tr., 52.)

On cross-examination, Petitioner acknowledged that, within the prior ten years, he had been convicted of a crime involving theft or dishonesty. (Tr., 53.) He acknowledged that he was driving Koskela around at about 3:00 a.m. and that he was driving Koskela's van. (Tr., 54.) He also acknowledged that he pulled up in front of Joe and Ed's market and that the van he was driving contained a large trash can with cigarettes when he was stopped by the police. But he denied hearing either the alarm or breaking glass when he picked up Koskela. (Tr., 56.)

At the conclusion of the trial, the court found that Petitioner's testimony was not credible, because it contradicted the testimony of every officer in the case. The court noted that the story was not even internally consistent because Petitioner testified that he heard Koskela shouting at him from across the street, but did not hear the alarm sounding when he pulled up in front of the store. The court credited the testimony of Officer Sabo that Petitioner had admitted he heard the glass breaking and pulled the car around because he did not want to abandon his friend. The statement made to Sabo both contradicted Petitioner's trial testimony and demonstrated that he knew that the store was being broken into. As a result, the court found that Petitioner was fully aware of the breaking and entering with intent to commit larceny at the time it occurred. In addition, the court found that Petitioner assisted in the commission of the crime because he drove the vehicle and the get-away is part of the crime. The court rejected the theory that Petitioner was not aware that Koskela was going to break and enter the market with intent to commit larceny. Instead, the court

accepted Officer York's testimony that he had observed the vehicle before it took the U-turn to pick up Koskela. Based on that testimony, the vehicle was not parked in the Rite Aid lot and was being driven without lights, which together showed that Petitioner intended the breaking and entering and was aware of Koskela's intent to commit larceny. The court found that Petitioner committed the breaking and entering with intent to commit larceny by aiding and abetting Koskela by driving the get-away vehicle. (Tr., 64-68.)

On April 28, 2005, the court sentenced Petitioner, as a fourth felony offender, to a term of five to twenty years of imprisonment.

### B. Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on December 20, 2005, raised the same two issues as raised in this application for habeas corpus relief. (See Def.-Appellant's Br. on Appeal, docket #18.) Petitioner filed a motion to remand, which was granted by the Michigan Court of Appeals on March 20, 2006. The court of appeals remanded the case for an evidentiary hearing to determine whether Petitioner was denied the effectiveness of trial counsel. The court of appeals retained jurisdiction. (See 3/20/06 Mich. Ct. App. Ord, docket #18.)

On May 12, 2006, the trial court held an evidentiary hearing. Petitioner's attorney at trial, Beverly Austin, was called as a witness. Petitioner waived any privilege between himself and Austin. (5/12/06 Evid. Hr'g Tr. (EH Tr.), 4, docket #17.) Austin testified that she met with Petitioner before his preliminary examination. She went over the case with him and reviewed the prosecutor's file. She then proceeded with the preliminary examination. Petitioner told her that he did not know that the breaking and entering and the larceny were going to occur. (EH Tr., 7.) She

thereafter visited him at the jail at least once and possibly twice. (EH Tr., 7-8.) She gave Petitioner discovery from the case, but she did not recall whether she did so at the jail or in the courtroom sometime before the day of trial. (EH Tr., 8.) When she went to speak with Petitioner in lockup, his codefendant, Koskela, was always present. Koskela frequently would attempt to speak with her, and she kept cautioning Koskela that he should speak with his own attorney. However, on two separate occasions, Petitioner gave her yellow sheet forms that appeared to be statements from Koskela. (EH Tr., 9.) Austin identified Exhibit 2 as a copy of one of the letters she saw. She did not identify Exhibit 1, and she testified that the second statement she had was not among those shown to her. (EH Tr., 10.) Exhibit 2 was a statement by Koskela that was given to her by her client. (EH Tr., 11.) Austin identified Exhibit 3 as the other statement she saw. (EH Tr., 13.) That statement indicated that Koskela wanted Petitioner cleared of the charge. Austin asked Koskela to speak with his attorney and, if he wanted an affidavit prepared, Austin would have someone to prepare one. Koskela would first say he wanted to make a statement and then say he would not because he was trying to make a deal with the court. (EH Tr., 13.) Koskela repeatedly interrupted Austin when she was trying to talk with her client. (EH Tr., 14.) Austin testified that Koskela told her at some point that Petitioner had nothing to do with the case. On other occasions, she was told by both her client and Koskela that Petitioner was involved. (EH Tr., 14.) At another time, Koskela told Austin that he had made a deal, and her client told her that he was interested in making the same deal. (EH Tr., 15.) Austin told her client that, if he wished her to go to the prosecutor to make a deal, he would have to be willing to tell her the factual basis he would put before the court. Petitioner told her that he had known what was going on and was involved. (EH Tr., 15.)

Petitioner testified that he never indicated to his attorney that he wanted to make a deal. (EH Tr., 17.) He also denied ever telling Austin that he knew what was going on at the time of the crime. (EH Tr., 18.) He claimed that he received a copy of the preliminary examination transcript when Austin came to visit him at the jail, but he never received police reports or witness statements. (EH Tr., 18.) Petitioner testified that he talked with his codefendant on a couple of occasions. Koskela wrote an affidavit, which Petitioner gave to his attorney. (EH Tr., 19.) Koskela told Petitioner that he would testify in Petitioner's case, and he approached Austin to tell her that. (EH Tr., 19.) Petitioner identified Exhibit 1 as the statement written by Koskela that Petitioner gave to Austin sometime before his sentencing. Austin kept the original and gave Petitioner a copy of that statement at the sentencing. (EH Tr., 20-21.) The statement indicated that Koskela would testify that Petitioner had nothing to do with the crime. (EH Tr., 21.)

Petitioner testified that he told the court at sentencing that he had been willing to accept a plea offer for a lower sentence, notwithstanding the fact that he maintained that he had no knowledge of the crime. (EH Tr., 22-23.) Petitioner again stated that he did not know about the planned crime and never saw Koskela go into the closed store. (EH Tr., 23.)

At the end of the hearing, counsel for Petitioner argued that trial counsel was ineffective in failing to talk to the attorney for Koskela. He also asked the court to reconsider his client's responsibility for the crime. In addition, he argued that he would have taken a plea deal, notwithstanding his innocence. (EH Tr., 26-27.)

The prosecutor responded that the theory before the hearing was that Austin was unprepared and unaware of some evidence. From the testimony, however, it was apparent that counsel was aware and had spoken with her client and Koskela about whether he was willing to

testify.  In addition, the testimony indicated that Petitioner had admitted his guilt to Austin, so Koskela's statement was not fully true.  Finally, Koskela did not plead guilty until two days before trial, and it was entirely likely that Koskela's attorney would have opposed Koskela coming forward to testify before trial.  (EH Tr., 27.)

The court concluded that counsel had not been ineffective.  The court found that the statements in question were self-serving and said no more than that Koskela wanted Petitioner cleared.  The court further concluded that the statements flew in the face of the evidence at trial.  The court also found that Austin was faced with a situation in which people would tell her one thing one day and another the next day.  Austin reasonably did not want to violate her ethical obligations by interfering with a represented codefendant.  The trial court found that Austin did an excellent job and that it was not her duty to approach the other attorney.  Instead, Austin acted reasonably by telling Koskela that, if he wanted to make an affidavit, he should talk to his attorney and have the attorney call her.  (EH Tr., 30-32.)  The court therefore found that counsel had not been ineffective.  (EH Tr., 32.)

The parties filed supplemental appellate briefs after remand.  By unpublished opinion issued February 1, 2007, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences.  (See 2/1/07 Mich. Ct. App. Opinion (MCOA Op.), docket #18.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals.  By order entered July 30, 2007, the Michigan Supreme Court denied his application for

leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #19.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

**Discussion**

I.      Ground 1:  Sufficiency of the Evidence

        In his first ground for habeas relief, Petitioner argues that the prosecution presented

insufficient evidence to convict Petitioner of breaking and entering with intent to commit larceny.

Specifically, he argues that the case was devoid of evidence that he was aware of his codefendant's

intent to commit the breaking and entering at the time he gave assistance to him.  He further argues

that the prosecution failed to show that, at the time of the breaking and entering, Petitioner

specifically intended that larceny or another felony be committed.

        A § 2254 challenge to the sufficiency of the evidence is governed by the standard set

forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."  This standard of

review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues

of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*,

506 U.S. 390, 401-02 (1993).   Rather, the habeas court is required to examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v.

Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

        The Michigan Court of Appeals ruled directly on this claim, which petitioner raised

on direct appeal.  Review of this issue must therefore be conducted under the AEDPA standard,

which the Sixth Circuit describes as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir.

2007). Review of challenges to the sufficiency of the evidence under the *Jackson v. Virginia*
standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547
F.3d 597, 602 (6th Cir. 2008); *Thompson v. Bock*, 215 F. App'x 431, 435 (6th Cir. 2007). In other
words, such an argument is properly understood as an allegation that the state court's decision
resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587,
596 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so
overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson*,
215 F. App'x at 436. This standard presents a "very difficult hurdle" for the habeas petitioner. *Id.*

   The Sixth Circuit recently summarized the "double layer of deference" given the
state-court decisions in this context:

> Thus, after AEDPA, federal courts reviewing state habeas claims accord a double
> layer of deference:
> First, as in all sufficiency-of-the-evidence challenges, we must determine whether,
> viewing the trial testimony and exhibits in the light most favorable to the prosecution,
> *any rational trier of fact* could have found the essential elements of the crime beyond
> a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
> L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the
> credibility of witnesses, or substitute our judgment for that of the jury. *See United
> States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might
> have not voted to convict a defendant had we participated in jury deliberations, we
> must uphold the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the prosecution. Second, even
> were we to conclude that a rational trier of fact could *not* have found a petitioner
> guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state
> appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28
> U.S.C. § 2254(d)(2).

*White v. Steele*, No. 08-5498, ___ F.3d ___, 2009 WL 4893144, at * 2 (6th Cir. Dec. 21, 2009)

(quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

   The Michigan Court of Appeals addressed the issue as follows:

Defendant first challenges the sufficiency of the evidence presented at trial. A challenge to the sufficiency of the evidence in a bench trial is reviewed de novo on appeal. *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). This Court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt. *People v Harmon*, 248 Mich App 522, 524; 640 NW2d 314 (2001). Circumstantial evidence and reasonable inferences drawn therefrom are sufficient to prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of breaking and entering are "(1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny or felony therein." *People v Adams*, 202 Mich App 385, 390; 509 NW2d 530 (1993).

Defendant did not break into the store himself. The evidence showed that the actual break-in was committed by Timothy Koskela. But a person who aids and abets in the commission of an offense may be charged, convicted, and punished as a principal. *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995). The elements that must be proven to convict a defendant as an aider and abettor are "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *Id.* "Defendant's specific intent or his knowledge of the principal's specific intent may be inferred from circumstantial evidence." *People v Eggleston*, 149 Mich App 665, 668; 386 NW2d 637 (1986).

There is no dispute that Koskela committed a breaking and entering. There is also no dispute that defendant drove Koskela to and from the scene of the crime. Such conduct is sufficient to find that defendant aided and abetted in the crime if he intended, or knew that Koskela intended, to commit the crime. *People v Davenport*, 122 Mich App 159, 162; 332 NW2d 443 (1982). Given the evidence that defendant drove Koskela to the area where the market was located, waited while Koskela broke into the market, drove over to the market with his lights off to pick up Koskela after the theft, and drove away from the market with his lights off for a time and exceeded the speed limit, a rational trier of fact could infer that defendant knew what Koskela was doing and willingly assisted him by conveying him to the crime scene and attempting to help him get away undetected. Although defendant testified at trial that he did not know that Koskela was planning to break into the market and had no idea that he had done so until after the crime was committed, the trial court rejected defendant's testimony as not credible. This Court will not substitute its judgment for that of the trial court but will defer to the trial court's resolution of factual issues that

involve the credibility of witnesses. *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997); *People v Martin*, 199 Mich App 124, 125; 501 NW2d 198 (1993).

(MCOA Op. at 1-2, docket #18.)

The state court applied the *Jackson* standard, citing state cases adopting the federal standard. *See People v. Harmon*, 640 N.W.2d 522, 524 (Mich. Ct. App. 2001) (citing *People v. Wolfe*, 489 N.W.2d 748, 751 (1992) (expressly applying the standard articulated in *Jackson*). The state court's application of that standard was entirely reasonable. First, the trial judge reasonably concluded that Petitioner's testimony about his lack of involvement was not credible in light of the circumstantial evidence. According to Sergeant York, who personally witnessed Petitioner's actions, Petitioner pulled up on the street, not in the parking lot of the Rite Aid, as Petitioner testified. Petitioner had his lights off and performed a U-turn in order to pull up in front of the market. He picked up Koskela, who was carrying a large trash can. Koskela placed the open trash can, which was filled with cigarettes, into the van near Petitioner. Petitioner then drove away from the scene with his lights out until he turned onto another road. After turning on his lights, he drove away at a rapid speed. The court reasonably credited York's testimony and found it to be indicative of Petitioner's knowledge and intent to assist Koskela's breaking and entering with larcenous intent.

The court's conclusion was further supported by the testimony of Sergeant Sabo, who indicated that Petitioner gave an entirely different story at the time he was arrested – a story that was far more consistent with that of Sergeant York. The court recognized the self-serving internal inconsistency of Petitioner's statement to Sabo, where he simultaneously declared that he heard the sound of glass breaking from across the street but had not heard the ringing alarm when he pulled

in front of the store, despite the fact that Corporal Hadder testified that an audible alarm was sounding from the store.

The trial court's factual findings are solidly based on the record before the court and are entitled to a presumption of correctness. 28 U.S.C. § 2254(e). Petitioner has failed to rebut that presumption by clear and convincing evidence. *Id.* The state court reasonably applied those facts to established Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner therefore is not entitled to relief on his first habeas ground.

II.     Ineffective Assistance of Counsel

In his second ground for habeas relief, Petitioner contends that trial counsel rendered ineffective assistance by failing to adequately investigate and call Koskela as a witness for the defense. He also argues that counsel failed to introduce Koskela's affidavits as evidence.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

On appeal, the Michigan Court of Appeals addressed Petitioner's claim as follows:

> Defendant next argues that he is entitled to a new trial due to the ineffective assistance of counsel. Following an evidentiary hearing, the trial court determined that counsel was not ineffective. Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. The trial court's factual findings are reviewed for clear error, but this Court determines de novo whether the facts properly found by the trial court could establish ineffective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

> To prevail on a claim of ineffective assistance of counsel, defendant must show that his counsel's performance was objectively unreasonable and the representation was so prejudicial that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show that, but for counsel's error, there was a reasonable probability that the result of the proceedings would have been different. This Court presumes that counsel's conduct fell within a wide range of reasonable professional assistance, and the defendant bears a heavy burden to overcome this presumption. [*People v Watkins*, 247 Mich App 14, 30; 634 NW2d 370 (2001), aff's 468 Mich 233 (2003) (citations omitted).]

> "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). "A substantial defense is one that might have made a difference

in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

> Defendant contends that counsel was ineffective for failing to call Koskela to testify on his behalf at trial. According to defendant, Koskela wanted to testify while defense counsel testified that Koskela vacillated. Assuming that Koskela was willing to testify at defendant's trial, the record does not indicate that he had any relevant testimony to offer. According to defense counsel, Koskela said that defendant was not involved in the offenses. According to defendant, Koskela stated in an affidavit that defendant had nothing to do with the offenses. Either way, the statement is untrue – defendant clearly was involved in the offenses in that he drove Koskela to and from the scene. Counsel is not ineffective for refusing to offer what she reasonably believes to be perjured testimony. *People v Hubbard*, 156 Mich App 712, 715-16; 402 NW2d 79 (1986). The critical issue was whether defendant intended to commit the crimes or knew that Koskela intended to commit the crimes when he provided assistance. The testimony at the hearing did not show whether Koskela could offer any evidence relevant to that issue. Therefore, the trial court did not err in finding that defendant failed to meet his burden of proving that counsel was ineffective.

(MCOA Op. at 2-3.) Again, this express ruling by the Michigan court on a federal issue is entitled to deference under AEDPA and may only be overturned if it represents an "objectively unreasonable" application of *Strickland*. *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007).

The court of appeals relied upon the Michigan standard of review for claims of ineffective assistance of counsel. That standard is identical to the *Strickland* standard. *See People v. Pickens*, 521 N.W.2d 797 (Mich. 1994) (adopting *Strickland* standard for claims under the Michigan constitution). Moreover, the court of appeals reasonably applied the *Strickland* standard in light of the facts found by the trial court. As previously discussed, the trial court held an evidentiary hearing on Petitioner's claim, at which trial counsel and Petitioner testified. The trial court found that Koskela's affidavits were self-serving and did not indicate more than that Koskela wanted Petitioner cleared of the offense. The trial court also found that Koskela's statements were completely unpersuasive, as they flew in the face of the evidence at trial. (EH Tr., 30-32.) The trial

court's factual findings were reasonable on the record of the evidentiary hearing and are presumed to be correct. 28 U.S.C. § 2254(e)(1).

Moreover, as the court of appeals held, trial counsel's performance is presumed to have been reasonable, *Stickland*, 466 U.S. at 689, and Petitioner fails entirely to demonstrate otherwise. According to counsel's testimony at the evidentiary hearing, which was credited by the trial judge, Koskela vacillated in his intent to testify on Petitioner's behalf, making him an unreliable witness. Moreover, the statement Koskela provided in his affidavit was general, failing to address the central issue of Petitioner's knowledge of Koskela's intent at the time Petitioner aided and abetted Koskela. As a result, Koskela's affidavit is largely irrelevant to the only real issue at trial. Further, as the court of appeals noted, Koskela's proposed testimony – that Plaintiff was not involved in the offense – was patently at odds with the undisputed evidence that Petitioner drove Koskela to and away from the crime scene. It was further at odds with Petitioner's surreptitious behavior in driving with his lights out, pulling a U-turn to pick up Koskela, and driving away without lights and at a high rate of speed. The trial court unequivocally stated that Koskela's testimony on this point was not credible.

Counsel's decision not to call Koskela or to attempt to introduce his affidavit[1] was well within the objective standard of reasonableness described in *Strickland*. 466 U.S. at 690. In addition, because the trial judge expressly found that Koskela's proposed testimony was not credible in light of the other evidence, Petitioner suffered no prejudice from counsel's failure to call Koskela. *Id.* at 694. In sum, Petitioner fails to demonstrate either prong of the *Strickland* standard. As a

---

[1]Whether Koskela's affidavit would have been admissible had he not testified is highly dubious under Michigan's hearsay rules. *See* MICH. R. EVID. 801-804.

- 20 -

consequence, the state court's rejection of his claim of ineffective assistance of counsel constituted

an entirely reasonable application of established Supreme Court precedent.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition

be denied.


Dated:   March 1, 2010                    /s/  Joseph G. Scoville
                                          United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).